1
2
3

# UNITED STATES DISTRICT COURT

## DISTRICT OF NEVADA

4
5

GENARO RICHARD PERRY,

Case No. 2:23-cv-00311-GMN-EJY

6

Petitioner,

7

v.

**Order Denying Petition for Writ of Habeas Corpus and Granting a Certificate of Appealability**

8

WARDEN GABRIELA NAJERA, et al.,

9

Respondents.

10 **I.    Summary**

11          Petitioner and former Nevada prisoner,[1] Genaro Richard Perry, was convicted in a 2016

12 bench trial of (1) Robbery With Use of a Deadly Weapon, (2) False Imprisonment With Use of a

13 Deadly Weapon, (3) Grand Larceny Auto, (4) Assault With a Deadly Weapon, (5) Coercion, (6)

14 Domestic Battery Resulting in Substantial Bodily Harm, and (7) Preventing or Dissuading a

15 Witness or Victim from Reporting a Crime or Commencing Prosecution, in connection with the

16 beating of his ex-girlfriend, and he was sentenced to 96 to 336 months imprisonment. (Exhs. 64,

17 65, 78, 111.)[2]  In the remaining grounds[3] of Perry's Petition for a Writ of Habeas Corpus under 28

18 U.S.C. § 2254, he alleges trial and appellate counsel provided ineffective assistance in violation of

19 the Sixth Amendment. (ECF No. 15.)  The Court denies the Petition, grants a Certificate of

20 Appealability on Grounds 2, 10, and 19, and kindly directs the Clerk of Court to enter Judgment.

21 **II.    Background[4]**

22          Perry and Corla Carpenter started a romantic relationship in the autumn of 2013, during

23 which she loaned him $1250. (Exh. 62 at 40–42, 88.)  Perry was aware that before their

24

25  [1] Perry initiated this habeas proceeding while he was incarcerated and has since been released from custody. (ECF Nos. 1; 20.)

26  [2] Respondents' exhibits (Exh.) are found at ECF Nos. 23–25, 27, and 32–33.
    [3] This Court previously dismissed Grounds 20-23. (ECF No. 37 at 5.)

27  [4] The Court makes no credibility, factual, or other findings regarding the evidence presented in the state courts.  This background summary is based on the state-court record and serves as merely a backdrop to the Court's consideration

28 of the issues presented in the case.  Failure to mention specific evidence or a category of evidence does not signify the Court overlooked it in considering the claims in the petition.

relationship, Carpenter chased a woman in a T.J. Maxx store with a knife and crowbar because the woman owed her $450 and could not pay all of it, for which Carpenter pleaded guilty to misdemeanor charges. (*Id.* at 75–84.) Carpenter believed Perry was a drug dealer, and, although she saw him use marijuana, and he told her that he had crack cocaine, she never saw it, never saw him use it, and never saw him sell it; she did, however, give him a ride several times when he may have sold drugs. (*Id.* at 85–88.) Carpenter received narcotics from a pain management physician for sickle cell and systemic lupus, which she claimed caused her joint pain and swelling. (*Id.* at 67–70, 99–101, 121.) Carpenter claimed that in November of 2013, Perry strangled or choked her, and "banged" her head against the floor, but she did not report it to the police because she was embarrassed. (*Id.* at 112–13, 116–18.) After that, their relationship was "off and on" until she broke up with him in April 2014. (*Id.* at 42, 117–18.)

Perry showed up at Carpenter's house on the night of April 30, 2014. (*Id.* at 43, 92–93.) Carpenter told Perry she did not want him at her house without a police escort. (*Id.*) He told her he was in a fight, needed his blood pressure medication, which he left at her home when they were dating, and asked to spend the night. (*Id.* at 44, 92–93.) She let him inside, but told him he had to leave in the morning. (*Id.* at 44–45.) When Carpenter awoke around 7:00 a.m., she told Perry he had to leave, and he responded with agitation, aggression, and profanity. (*Id.* at 45–46.) She attempted to grab her telephone, but he charged toward her, told her she was not calling the police on him, took the telephone, and threw it against the wall. (*Id.* at 46–47.) As she tried to escape to the attached bathroom, he punched her in the face, and she fell backward, hit her head on the toilet, and landed on her back. (*Id.* at 48–51.) He punched her in the face, she screamed, and he told her to "shut the f— up" and punched her some more as they struggled. (*Id.*) She bit his hand, allowing her to escape down the first leg of the staircase to the landing, but he kicked her in the back causing her to fall down the second leg of the staircase into the kitchen. (*Id.* at 48–53.)

Carpenter landed on her stomach and then curled into a fetal position on her left side. (*Id.* at 52–53, 68–69, 97–99.) Perry punched her in the face and eye, and, with his high-top tennis shoes, kicked her in the face, head, and side. (*Id.* at 52–53, 95, 98.) He grabbed a knife lying on the stove and swung it striking her hands. (*Id.* at 54.) He then forced her into the living room with

the knife at her back. (*Id.*)  While she sat bleeding, he paced with the knife, claimed she made him cause her eye injuries, and knowing she had a Muslim background, threatened she would see "Allah tonight." (*Id.* at 54–56.)  Carpenter went to her half bath (while Perry followed with the knife) to examine her injuries and intentionally wiped blood on the wall and spit in the sink to leave a trail in case she died. (*Id.* at 57.)  Perry took Carpenter's car keys, and marched her to the upstairs bathroom with the knife at her back. (*Id.* at 59–62.)  He threatened to kill her if she left before the garage door shut upon his exiting with her vehicle. (*Id.*)  He threw her cellphone in a toilet, saying she would not be able to call police. (*Id.* at 62–63.)  When Carpenter heard the garage door, she ran to a neighbor's house for help, but received no response, and returned home, retrieved the phone from the toilet, shook water out of it, and called 911. (*Id.* at 63–64.)

Although Carpenter was released from the hospital on the day of the incident, her injuries included two black eyes, a right orbital fracture, a broken nose, two broken teeth, nerve damage, cuts on her hands, and sore ribs. (*Id.* at 66–72, 80, 108.)  She had eight weeks of physical therapy because Perry stomping on her hip affected her ability to walk. (*Id.*)  She received a surgical implant to move her eyeball back into place as the bone holding it up was fractured from being kicked or punched. (*Id.* at 16–24, 32, 34, 68, 73.)  She had two surgeries for nerve damage and, at the time of trial, was scheduled for a third. (*Id.* at 70–71, 73, 121.)

Carpenter's vehicle finance company located her vehicle using a Global Positioning System; however, when the police found the vehicle, Carpenter did not have any keys because Perry had taken her only set. (Exhs. 62 at 74–75; 63 at 8–10.)  Knowing the police were understaffed and would not actively search for Perry, and knowing Perry had an unrelated outstanding arrest warrant, Carpenter located Perry at a place he frequented, told police his location, and the police arrested him. (Exh. 62 at 112–13.)

### III.    Governing Standards of Review

#### A.    Review under the Antiterrorism and Effective Death Penalty Act

The Antiterrorism and Effective Death Penalty Act (AEDPA) provides the legal standards for consideration of Perry's Petition:

(d) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim—

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

A state court's decision is contrary to clearly established Supreme Court precedent, within the meaning of § 2254(d)(1), "if the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases" or "if the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent." *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 405–06 (2000), and citing *Bell v. Cone*, 535 U.S. 685, 694 (2002)). A state court's decision is an unreasonable application of clearly established Supreme Court precedent under § 2254(d)(1) "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 75 (quoting *Williams*, 529 U.S. at 413). "The 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous . . . [rather] [t]he state court's application of clearly established law must be objectively unreasonable." *Id.* (quoting *Williams*, 529 U.S. at 409–10, 412) (internal citation omitted).

The Supreme Court has instructed that "a state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (citing *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). The Supreme Court has stated that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 102 (citing *Lockyer*, 538 U.S. at 75). *See also Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (describing the standard as a "difficult-to-meet" and "highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.")

(internal citations omitted).  The petitioner carries the burden of proof. *See Cullen*, 563 U.S. at 181 (citing *Woodford v. Visciotti*, 537 U.S. 19, 25 (2002)).

### B.    Standards for Evaluating Ineffective Assistance of Counsel (IAC)

"[T]he Sixth Amendment does not guarantee the right to perfect counsel; it promises only the right to effective assistance." *Burt v. Titlow*, 571 U.S. 12, 24 (2013).  An IAC claim requires a petitioner demonstrate (1) the attorney's "representation fell below an objective standard of reasonableness[;]" and (2) the attorney's deficient performance prejudiced the petitioner such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland v. Washington*, 466 U.S. 668, 687–88, 694 (1984).  "Unless a [petitioner] makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." *Id.*

A petitioner who makes an IAC claim "must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." *Strickland*, 466 U.S. at 690.  A court considering an IAC claim, "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action 'might be considered sound trial strategy.'" *Id.* at 689.  Thus, when considering IAC claims, a court is obliged to "determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance." *Id.* at 690.  "In making that determination, the court should keep in mind that counsel's function, as elaborated in prevailing professional norms, is to make the adversarial testing process work in the particular case," and "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.*

"A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689.  Strategic choices made "after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable[.]" *Id.* at 690.  However, "strategic choices made after less

than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation." *Id.* at 690–91. "The duty to investigate and prepare a defense is not limitless: it does not necessarily require that every conceivable witness be interviewed." *Bragg v. Galaza*, 242 F.3d 1082, 1088, (9th Cir. 2001), *opinion amended on denial of reh'g,* 253 F.3d 1150 (9th Cir. 2001) (citations and quotations omitted) (quoting *Hendricks v. Calderon*, 70 F.3d 1032, 1040 (9th Cir. 1995). "When the record clearly shows that the lawyer was well-informed, and the defendant fails to state what additional information would be gained by the discovery she or he now claims was necessary, an ineffective assistance claim fails." *Id.*

In establishing there is a reasonable probability the result of the trial would have been different, "[a] reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. "The likelihood of a different result must be substantial, not just conceivable." *Harrington*, 562 U.S. at 112; *Cullen*, 563 U.S. at 189. A petitioner must show "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" and "counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Strickland*, 466 U.S. at 687–88.

To prevail on an ineffective assistance of appellate counsel claim, a petitioner must show his appellate counsel acted deficiently and "a reasonable probability that, but for his counsel's" deficiency, the petitioner "would have prevailed on his appeal." *Smith v. Robbins*, 528 U.S. 259, 285 (2000). When evaluating claims of ineffective assistance of appellate counsel, the performance and prejudice prongs of the *Strickland* standard partially overlap. *See, e.g., Bailey v. Newland*, 263 F.3d 1022, 1028–29 (9th Cir. 2001); *Miller v. Keeney*, 882 F.2d 1428, 1434 (9th Cir. 1989). Effective appellate advocacy requires weeding out weaker issues with less likelihood of success. The failure to present a weak issue on appeal neither falls below an objective standard of competence nor causes prejudice to the client for the same reason—because the omitted issue has little or no likelihood of success on appeal. *Id.*

In *Harrington*, the Supreme Court clarified that *Strickland* and § 2254(d) are each highly deferential, and when the two apply in tandem, review is doubly so. *See Harrington*, 562 U.S. at

104–05. *See also Cheney v. Washington*, 614 F.3d 987, 995 (9th Cir. 2010) (internal quotation marks omitted).  The Court further clarified, "[w]hen § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard." *Harrington*, 562 U.S. at 105.

## IV.    Discussion

### A.    Ground 1

Perry alleges trial counsel provided ineffective assistance by failing to call or list two witnesses to support the self-defense theory: (A) Dr. Steven Gabaeff to dispute Carpenter's injuries; and (B) the T.J. Maxx security guard who witnessed Carpenter run through T.J. Maxx holding a knife and crowbar. (ECF No. 15 at 3–5.)

#### 1.    Ground 1(A)—Dr. Steven Gabaeff

Perry alleges counsel was ineffective for failing to call Gabaeff to testify about his opinion that (1) the State's expert misdiagnosed Carpenter for fraudulent billing purposes and the orbital surgery was "most likely" unnecessary; (2) Carpenter received unnecessary ophthalmologic care before and after the incident; (3) the diagnoses for iritis and episcleritis is a "trumped up case of conjunctivitis milked for multiple visits" because conjunctivitis does not pay; and (4) there is no documentation from others about double vision and sunken eye. (ECF No. 15 at 3–4.)

Perry was charged with, *inter alia*, Battery Resulting in Substantial Bodily Harm Constituting Domestic Violence. (Exh. 26 at 4.)   "[U]nless the context otherwise requires," "substantial bodily harm" means:  (1) "Bodily injury which creates a substantial risk of death or which causes serious, permanent disfigurement or protracted loss or impairment of the function of any bodily member or organ"; or (2) "Prolonged physical pain." NRS § 0.060. "The phrase 'prolonged physical pain' must necessarily encompass some physical suffering or injury that lasts longer than the pain immediately resulting from the wrongful act." *Collins v. State*, 125 Nev. 60, 64–65, 203 P.2d 90, 92–93 (2009).  "In a battery, for example, the wrongdoer would not be liable for 'prolonged physical pain' for the touching itself.  However, the wrongdoer would be liable for any lasting physical pain resulting from the touching." *Id.* at 64–65 n.3, 203 P.2d at 93 n.3.

In Perry's case, the parties were initially scheduled to try the case to a jury; however, the

defense medical expert, Gabaeff, was unavailable, and the State agreed "to use" its expert, Dr. Steven Leibowitz, who performed Carpenter's orbital fracture surgery, "to get in" the defense medical expert testimony. (Exh. 32 at 3–7.)  When Leibowitz became unavailable for the jury trial, the State was prepared to try the case solely on the medical documentation; however, defense counsel argued "having no doctor here to talk about anything for the jury is a little too risky because [substantial bodily harm] is one of the aggravating factors of the crimes we're charged with." (*Id.*) The jury trial was continued, and the parties later stipulated to a bench trial, where Leibowitz, but not Gabaeff, testified. (Exhs. 41 at 10–12; 62 at 5, 13–21; 65.)

Leibowitz testified he first saw Carpenter in May of 2014 after a retinal surgeon referred her for a possible orbital fracture. (Exh. 62 at 15–16.)  Leibowitz confirmed, based on a CT scan, that Carpenter suffered a blowout fracture of the right orbital bone. (*Id.* at 16–17.)  In Leibowitz's experience, orbital fractures are "almost always" caused by blunt force trauma like a kick or a punch, and not by having a head strike a floor. (*Id.* at 17, 24–25.)  Leibowitz testified Carpenter suffered double vision (diplopia), "numbness of the cheek, upper lip and teeth area," and a sunken eyeball (enophthalmos). (*Id.* at 18–19.)  He clarified the orbital fracture is not an eyesight issue and concerns about vision would be addressed by the referring physician. (*Id.* at 29–30, 36.)  He agreed that not all patients honestly relate their medical history, and he does not usually ask about a history of conjunctivitis. (*Id.* at 30–31.)  In June of 2014, Leibowitz inserted an implant to repair Carpenter's orbital fracture. (*Id.* at 20–21.)  At a post-operative visit a week later, Carpenter still suffered intermittent double vision but "it was much better." (*Id.* at 23.)

In post-conviction review proceedings, the Nevada Court of Appeals (NCA) determined Perry failed to establish trial counsel was ineffective for failing to call Gabaeff to refute Leibowitz's testimony about the substantial bodily injury that Carpenter suffered:

> Perry contends the district court erred by denying his claims that trial counsel was ineffective without first conducting an evidentiary hearing. To demonstrate ineffective assistance of trial counsel, a petitioner must show counsel's performance was deficient in that it fell below an objective standard of reasonableness and prejudice resulted in that there was a reasonable probability of a different outcome absent counsel's errors. *Strickland v. Washington,* 466 U.S. 668, 687–88 (1984); *Warden v. Lyons,* 100 Nev. 430, 432–33, 683 P.2d 504, 505 (1984) (adopting the test in *Strickland).*  Both components of the inquiry must be shown. *Strickland,* 466 U.S. at 687.  To warrant an evidentiary hearing, a petitioner

must raise claims supported by specific factual allegations that are not belied by the record and, if true, would entitle him to relief. *Hargrove v. State,* 100 Nev. 498, 502–03, 686 P.2d 222, 225 (1984). We give deference to the district court's factual findings if supported by substantial evidence and not clearly erroneous but review the court's application of the law to those facts de novo. *Lader v. Warden,* 121 Nev. 682, 686, 120 P.3d 1164, 1166 (2005).

[P]erry claimed that trial counsel was ineffective for failing to call a specific, independent medical expert to refute the State's medical expert as to the substantial bodily injury suffered by the victim. Perry provided a copy of a report prepared by the medical expert. In this report, the medical expert disputes the treatment the victim received before and after the injury to her eye. However, the report does not dispute that the victim's orbital bone was broken or that she lost several teeth as a result of the injuries she received. Therefore, Perry failed to demonstrate that counsel was deficient, or a reasonable probability of a different outcome had counsel presented the independent medical expert's testimony. Accordingly, we conclude the district court did not err by denying this claim without first conducting an evidentiary hearing.

(Exh. 220 at 2–4.) The NCA's determination is neither contrary to nor constitutes an unreasonable application of clearly established federal law as determined by the Supreme Court and is not based on an unreasonable determination of the facts considering the state court's proceedings.

Dr. Gabaeff's notes, submitted with Perry's state post-conviction petition, acknowledged Carpenter suffered two dental implants that were "in the area of punch . . . probably all related to incident" but speculates "some pre-existing poor detention were probably present." (Exh. 104 at 26.) Gabaeff's notes state Carpenter had an orbital bone fracture for which she received an orbital implant but speculates that surgery was "most likely not necessary" as, after the surgery, Carpenter still had double vision. (*Id.* at 32.) At trial, however, Leibowitz explained that Carpenter's surgery was necessary, because she met both criteria for surgical intervention, i.e., she suffered diplopia and enophthalmos and "the eyeball and the muscle are sinking down into the sinus; that's not good." (Exh. 62 at 20, 22.) And, although Leibowitz admitted that, after the surgery, Carpenter continued to suffer double vision, it was "much better" than before surgery. (*Id.* at 23–24.) Based on the record, the NCA's determination that Gabaeff's did not dispute Carpenter's orbital bone was broken or that she lost teeth from the injuries she received during the incident, as evidence of substantial bodily harm, is objectively reasonable. The NCA was consequently reasonable in its application of *Strickland* and determination that trial counsel's failure to call Gabaeff to refute the State's evidence of substantial bodily harm, did not fall below an objective standard of

reasonableness and there is no reasonable probability the result of the trial would have been different but for counsel's failure to do so.  Ground 1(A) is denied.

### 2.    Ground 1(B)—Security Guard

Perry alleges trial counsel provided ineffective assistance by failing to call the T.J. Maxx security guard to testify about Carpenter chasing a woman with a knife and crowbar. (ECF No. 15 at 4–5.)  He claims the testimony would impeach Carpenter's credibility by showing she was a "raving lunatic." (*Id.*)

Perry moved *in limine* to admit evidence of Carpenter's prior arrest for carrying a concealed weapon and assault with a deadly weapon at a T.J. Maxx store where a security guard witnessed Carpenter chase and threaten another individual with a knife inside the store. (Exh. 43 at 3–5.) Perry argued the evidence was relevant under NRS § 48.045 to prove self-defense. (*Id.*)  The trial court granted the motion "to the extent that he raises self-defense at trial and seeks to admit evidence about this incident of which he was aware to show that . . . it affected his state of mind on this day . . . ." (Exh. 60 at 9.)  At trial, defense counsel's request to call the T.J. Maxx security guard to establish "a fuller picture of Ms. Carpenter" was denied:

> [DEFENSE COUNSEL]: We—the only other witness that we intended to possibly call would have been the security guard.  I can make an offer of proof.  I think the Court really, and I've spoken about this with [the State], I think the Court's ruling on the previous motion regarding—would be just through *Gideon* testimony about more of the details of what took place at T.J. Maxx—
>
> . . . .
>
> It would be brought in to color up and give some more details as to her activities that day.
>
> . . . .
>
> To try and establish a slightly more of what we would consider a fuller picture of Ms. Carpenter.  I think the Court's previous ruling on the motion is sufficient for the record.  I don't—I'll do whatever the Court would like.  We've talked about it and we think that your ruling on that motion, you made it clear in the evidence offer that would come if we would try to offer for that, but.
>
> THE COURT: So, I was only allowing information about that incident to the extent that it affected your client's . . . state of mind . . . that day.  So unless he talked to the security guard I don't see how that would be pertinent to that issue.
>
> [DEFENSE COUNSEL]: Right.  And I did speak about this with Mr. Perry.  He understands what's going on.  I just wanted to make sure we talked about it.

(Exh. 63 at 63–65.)

On state direct appeal, the NCA relatedly determined the trial court did not abuse its discretion by disallowing the security guard's testimony:

> Perry claims the district court erred by excluding testimony necessary to support his self-defense claim. "We review a district court's decision to admit or exclude evidence for an abuse of discretion." *Mclellan v. State*, 124 Nev. 263, 267, 182 P.3d 106, 109 (2008). Prior to trial, the district court conducted a hearing on Perry's motion to admit evidence pursuant to NRS 48.045(2). Perry sought to elicit testimony from the victim to show the victim previously chased a woman through TJ Maxx with a knife and crowbar, the victim told Perry about this prior incident, and Perry's knowledge of this prior incident affected how he responded to the victim in the instant case. The district court found the evidence was relevant to Perry's claim of self-defense, it was clear and convincing evidence, and it was not more prejudicial than probative. However, the district court limited the admission of this evidence to "evidence about this incident of which [Perry] was aware to show . . . that it affected his state of mind" on the day of the charged offenses.
>
> During the trial, Perry sought to present the testimony of a security guard who witnessed the TJ Maxx incident in order to bolster his self-defense claim. The district court reiterated it was only allowing evidence about the TJ Maxx incident to the extent that it affected Perry's state of mind. And the district court ruled, unless Perry had talked to the security guard, the security guard's testimony was not pertinent to the issue of self-defense. We conclude the district court did not abuse its discretion by excluding the security guard's testimony. *See Daniel v. State*, 119 Nev. 498, 515–17, 78 P.3d 890, 902–03 (2003) (discussing the admission of evidence when a defendant claims self-defense and knew of the victim's prior violent conduct).

(Exh. 3 at 40–41.)

In state post-conviction review proceedings, the NCA determined trial counsel was not ineffective for failing to call the security guard because the guard did not tell Perry about the incident, impeachment using extrinsic evidence is prohibited when collateral to the proceeding, and Carpenter testified about her conduct during the incident:

> [P]erry claimed that trial counsel was ineffective for failing to call a security guard to testify about an incident involving the victim. He argued the security guard's testimony would have supported his self-defense claim. Counsel attempted to call this witness at trial, but the trial court did not allow it based on the fact that Perry did not hear the story about the incident from the security guard and, therefore, the security guard's testimony was not relevant to Perry's self-defense claim. Perry also claimed the security guard's testimony could have been used to impeach the witness. However, "[i]mpeachment by use of extrinsic evidence is prohibited when collateral to the proceedings." *Lobato v. State*, 120 Nev. 512, 518, 96 P.3d 765, 770 (2004); *see also* NRS 50.085(3). Further, the victim testified about the incident that the security guard witnessed. Thus, Perry failed to demonstrate that counsel was deficient or that he was prejudiced. Accordingly, we conclude the district court did not err by denying this claim without first conducting an evidentiary hearing.

(Exh. 220 at 3–4.)

The NCA's application of *Strickland* is objectively reasonable. Carpenter testified Perry was aware she previously chased another individual with a knife in a T.J. Maxx when the individual failed to pay a debt owed to Carpenter and Carpenter pleaded guilty to the resulting charges. Trial counsel attempted to call the security guard to testify to the guard's observations of Carpenter's behavior, however the trial court reiterated its ruling that such testimony was only relevant and admissible if the guard had relayed his observations to Perry. There is no evidence the guard did so. And, the NCA ruled that, as a matter of state law, the trial court did not abuse its discretion by excluding the guard's testimony under these circumstances. Thus, Perry's trial counsel attempted to present the guard's testimony but was thwarted by state evidentiary rules. Failing to offer inadmissible evidence is not ineffective assistance of counsel. *See Stanley v. Schriro*, 598 F.3d 612, 620 (9th Cir. 2010) ("No prejudice is suffered when counsel declines to pursue the development of testimony that would be inadmissible at trial."). Ground 1(B) is denied.

**B.    Ground 2**

Perry alleges trial counsel was ineffective for failing to test the knife to establish Carpenter's fingerprints, but not his, and Perry's blood, were on it. (ECF No. 15 at 6.) He claims such evidence, together with evidence of the cut on his chest, was crucial to his self-defense theory and would prove his side of the story. (*Id.*)

Perry filed a post-trial motion requesting an order directing the Las Vegas Metropolitan Police Department to conduct genetic marker and latent fingerprint analysis of evidence impounded at the crime scene; however, the NCA affirmed the denial of the motion:

> Genaro Richard Perry appeals from an order of the district court denying a "motion requesting order directing the Las Vegas Metropolitan Police Department to conduct genetic marker and latent fingerprint analysis of evidence impounded at the crime scene." Eighth Judicial District Court, Clark County, Jacqueline M. Bluth, Judge.
>
> In his February 3, 2021, motion, Perry first sought pursuant to NRS 176.0918, genetic marker analysis of blood samples collected from the crime scene. The State's theory at trial was that Perry attacked his ex-girlfriend with a knife, and Perry's theory was self-defense. Perry alleged that the test results would have supported his self-defense theory by showing that the victim had the knife in her hand and that Perry was cut by the knife. The evidence presented at trial was that Perry punched the victim multiple times, there was a struggle, and the victim bit

Perry's hand prior to Perry grabbing the knife. In light of this evidence, the presence of Perry's blood at the crime scene or on the knife would not result in a reasonable probability that Perry would not have been prosecuted or convicted. *See* NRS 176.09183(1)(c)(1). Therefore, we conclude the district court did not abuse its discretion by denying Perry's request for genetic marker analysis. *See* NRS 176.09183(5)(b).

Perry also sought an order directing the local police department to conduct latent fingerprint analysis on the knife. No statute or court rule permits an appeal from an order denying such a motion. Therefore, we decline to consider any claims relating to his request for fingerprint analysis. *See Castillo v. State*, 106 Nev. 349, 352, 792 P.2d 1133, 1135 (1990) (holding the appellate court lacks jurisdiction where no statute or court rule authorizes the appeal).

(Exh. 176 at 2–3.)

In state post-conviction proceedings, the NCA denied trial counsel was ineffective for failing to test the knife for DNA and fingerprints:

[P]erry claimed that trial counsel was ineffective for failing to have the knife used in the attack tested for DNA and fingerprints. Perry claimed that had the knife been tested, it would have shown that his fingerprints were not on the knife and the only blood on the knife was his. He alleges the victim cut him across the chest.

Evidence presented at trial showed that Perry and the victim had a prior domestic relationship. After pushing the victim downstairs, Perry grabbed a knife belonging to the victim and cut the victim's hand. Further, the victim testified that she bit Perry's hand prior to him handling the knife and he bled. Thus, because both Perry's and the victim's DNA and fingerprints could have been found on the knife, any fingerprint or DNA evidence would not have resulted in a reasonable probability of a different outcome at trial. Further, because the evidentiary value of the DNA and fingerprints would have been low, Perry cannot demonstrate counsel was deficient for failing to have the knife tested. Accordingly, we conclude the district court did not err by denying this claim without first conducting an evidentiary hearing.

(Exh. 220 at 4–5.)

The NCA's determination incorrectly states that Perry's hand bled when Carpenter bit it because there is no such evidence in the state-court record of proceedings. *See* 28 U.S.C. §§ 2254(d)(2); 2254(e)(1). Nonetheless, the NCA's determination was not solely based on that unreasonable determination of fact; and its application of *Strickland* based on the alternative determination of the low evidentiary value of DNA and fingerprint evidence is objectively reasonable. First, Carpenter testified she used the knife to eat a steak dinner on the night before the incident and left it on the stove. (Exh. 62 at 54.) Thus, her fingerprints (and DNA) were likely to be found on the knife regardless of whether she used the knife to cut Perry's chest. Accordingly,

it was objectively reasonable for the NCA to conclude counsel was not ineffective for failing to test the knife and there is no reasonable probability the result of the trial would have been different had counsel tested the knife and discovered Carpenter's fingerprints and DNA were on it.  Second, Perry claims his blood was on the knife because Carpenter cut his chest during the incident, and he told Dr. Gabaeff she cut his chest. (Exh. 104 at 29).  Perry, however, did not testify at trial, no evidence established he was cut during the incident, and he fails to provide any substantiation, beyond his self-serving statements, that she cut his chest with the knife.  Unsupported self-serving statements do not present a colorable claim of ineffective assistance of counsel for failure to properly investigate.  Moreover, given that the state-court record suggests trial counsel was aware of Gabaeff's notes indicating Perry claimed he was cut in the chest, and the absence of any evidence at trial that Perry was cut in the chest during the incident, Perry fails to overcome the strong presumption that counsel's failure to pursue testing the knife for Perry's blood and fingerprints might be considered sound trial strategy.  *See Strickland*, 466 U.S. at 689.  *See also id.*, at 690–91 ("strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation.").  Under the circumstances, the NCA was objectively reasonable in its conclusion that Perry failed to establish counsel's performance was deficient or that there is a reasonable probability the result of the trial would have been different but for trial counsel's failure to seek test results for fingerprints and DNA on the knife.  Ground 2 is denied.

### C.    Ground 3

Perry alleges trial and appellate counsel were ineffective for failing to challenge the complaint because it fails to list the address or crossroads of the incident. (ECF No. 15 at 7–8.)

The NCA determined Perry failed to demonstrate counsel was ineffective as he failed to show the address of the incident must be listed on the charging document:

> [P]erry claimed that trial counsel was ineffective for failing to challenge the charging document because it did not list the address of the incident.  Perry failed to demonstrate that the address had to be listed in the charging document. *See* NRS 173.075.  Therefore, he failed to demonstrate that counsel was deficient for failing to challenge the charging document or a reasonable probability of a different outcome had counsel challenged it.  Accordingly, we conclude the district court did not err by denying this claim without first conducting an evidentiary hearing.

[FN 1] Perry also argued that counsel should have raised this claim on appeal. Because Perry failed to demonstrate the charging document needed the address where the crime was committed, he failed to demonstrate this claim would have had a reasonable probability of success on appeal. Thus, he failed to show counsel was deficient for failing to raise this claim on appeal, and we conclude the district court did not err by denying this claim without first conducting an evidentiary hearing. *See Kirksey v. State,* 112 Nev. 980, 998, 923 P.2d 1102, 1114 (1996).

(Exh. 220 at 5.) The NCA's application of *Strickland* and *Smith* is objectively reasonable.

In Nevada, a complaint is a written statement of the essential facts constituting the public offense charged. NRS § 171.102. An indictment or information must be "a plain, concise and definite written statement of the essential facts constituting the offense charged." NRS § 173.075. *See also Sheriff, Clark Cnty. v. Levinson*, 95 Nev. 436, 437, 596 P.2d 232, 234 (1979) (explaining an information must provide adequate notice to the accused.). Here, Perry identifies no case or court rule that requires a charging document plead the address or crossroad of an incident. Moreover, the complaint and information filed against Perry provided adequate notice the alleged offenses occurred within Clark County in the State of Nevada. (Exhs. 6 at 2; 26 at 3.) Thus, the NCA was objectively reasonable in its determination that neither trial nor appellate counsel was ineffective for failing to challenge the charging instrument. *See James v. Borg*, 24 F.3d 20, 27 (9th Cir. 1994) (holding trial attorney not ineffective for failing to make "frivolous" argument); *Turner v. Calderon*, 281 F.3d 851, 872 (9th Cir. 2002) ("A failure to raise untenable issues on appeal does not fall below the *Strickland* standard."). Ground 3 is denied.

### D.    Ground 4

Perry alleges trial counsel was ineffective for failing to object to the removal of the self-defense instructions. (ECF No. 15 at 8–9.) He argues counsel should have objected to preserve the issue for appeal, and that he was prejudiced because self-defense was his defense at trial. (*Id.*)

In Nevada, a self-defense instruction must state, among other things, that "[i]f evidence of self-defense is present, the State must prove beyond a reasonable doubt that the defendant did not act in self-defense. If you find that the State has failed to prove beyond a reasonable doubt that the defendant did not act in self-defense, you must find the defendant not guilty." *Runion v. State*, 116 Nev. 1041, 1051, 13 P.3d 52, 59 (2000).

In Perry's case, the State opposed a self-defense instruction arguing there was no evidence from which an inference of self-defense could be made; defense counsel erroneously conceded the victim did not assist the defense's self-defense theory; and the trial court ruled there was no evidence of self-defense:

> [THE STATE]:  [I] didn't hear any evidence throughout the case even in inference of slight—or self-defense so even though those were initially included with the packet and they were presented to Your Honor, at this point I don't think that there's any evidence to support the giving or the including of the self-defense Instructions in this particular case.  So that was instructions on pages 35 through 40.
>
> . . . .
>
> [DEFENSE COUNSEL]: Your Honor, the evidence itself to support those Instructions, it's a good argument that we didn't establish enough evidence to get to that point.  Certainly the victim did not assist us in that endeavor and Officer Braggs [sic] did not—Braggs right; did not say that she saw any evidence.
>
> I will argue in closing that it's possible our officer was slightly biased, with all due respect for her service, and I'll make an argument about that.  I—I'm saying everything I think I can.
>
> THE COURT:  Right.  I appreciate that.  Right.
>
> So, there is no evidence that Ms. Carpenter made any threat or threatened any kind of violence or held a weapon or said she was going to do anything to cause the Defendant harm.  So, I think the State is correct that there is not evidence to support the giving of those Instructions in this case.  I just—there just isn't evidence of self-defense.

(Exh. 67 at 4–5.)

On state direct appeal, the NCA relatedly determined the trial court erred by rejecting the self-defense instruction because Carpenter provided some support for the self-defense theory, but the error was harmless beyond a reasonable doubt:

> Perry claims the district court erred by rejecting the parties' proposed instructions on self-defense.  We review a district court's exercise of discretion when settling jury instructions for abuse of discretion or judicial error. *Crawford v. State*, 121 Nev. 744, 748, 121 P.3d 582, 585 (2005).  "[A] defendant is entitled to a jury instruction on his theory of the case so long as there is some evidence to support it, regardless of whether the evidence is weak, inconsistent, believable, or incredible." *Hoagland v. State*, 126 Nev. 381, 386, 240 P.3d 1043, 1047 (2010).
>
> We conclude the district court abused its discretion by rejecting the instructions on self-defense because Perry presented some evidence in support of his self-defense claim through the victim's testimony.  However, we further conclude the error was harmless because it is clear beyond a reasonable doubt that a rational trier of fact would have found Perry guilty absent the error. *See Gonzalez v. State*, 131 Nev. ___, ___, 366 P.3d 680, 684 (2015) (instructional errors involving a defendant's right to self-defense have constitutional dimension); *Nay*

*v. State*, 123 Nev. 326, 333–34, 167 P.3d 430, 435 (2007) (stating the test for harmless-error analysis of an instructional error with constitutional dimension).

(Exh. 3 at 41–42.)

In state post-conviction proceedings, the NCA determined Perry failed to demonstrate trial counsel was ineffective as he failed to show further objection would have changed the trial court's ruling or provided a more favorable standard of review for appeal:

> [P]erry claimed that trial counsel was ineffective for failing to object to the removal of the self-defense instructions. Counsel proposed the self-defense instructions, and the trial court declined to read them. Perry failed to demonstrate that further objection would have changed the trial court's decision or provided him with a more favorable standard of review on appeal. This court reviewed the trial court's decision, found it was error, but determined that the error was harmless. *See Perry v. State*, No. 69139-COA, 2016 WL 7377159 (Nev. Ct. App. Dec. 14, 2016) (Order of Affirmance). Therefore, Perry failed to demonstrate counsel was deficient or a reasonable probability of a different outcome at trial or on appeal had counsel objected to the trial court's decision. Accordingly, we conclude the district court did not err by denying this claim without first conducting an evidentiary hearing.

(Exh. 220 at 5–6.) The NCA's determination that the error was harmless beyond a reasonable doubt forecloses argument that counsel's performance with respect to the error was prejudicial. *See, e.g., White v. Johnson*, 153 F.3d 197, 208 (5th Cir. 1998) (concluding finding that constitutional error is harmless forecloses any argument that counsel's performance with respect to the error was prejudicial). Accordingly, although counsel's concession was error, the NCA's determination that Perry failed to demonstrate a reasonable probability the result of the trial or appeal would have been different but for counsel's erroneous concession with respect to the self-defense theory, is objectively reasonable. Ground 4 is denied.

### E.    Ground 5

Perry alleges trial counsel's preliminary-hearing waiver was ineffective as the charges would have been discredited had counsel questioned Carpenter about blood on the walls and garage floor, bleach she poured on Perry's clothes, and cutting Perry's chest with a knife. (ECF No. 15 at 9.)

In state post-conviction proceedings, the NCA determined counsel was not ineffective for waiving the preliminary hearing because Perry, not counsel, waived preliminary hearing, and Perry failed to demonstrate a reasonable probability of a different outcome because he was convicted of

all charges based on a higher standard of proof at trial:

> [P]erry claimed that trial counsel was ineffective for waiving the preliminary hearing. Perry claimed that had a preliminary hearing been held, the victim would have been discredited and the charges would have been reduced or dismissed. The record demonstrates that Perry, not counsel, waived the right to his preliminary hearing. Thus, Perry failed to demonstrate counsel was deficient. Further, Perry failed to demonstrate a reasonable probability of a different outcome with respect to his charges because he was convicted of all charges after trial and the burden of proof is higher at trial. *Cf. Dettloff v. State,* 120 Nev. 588, 596, 97 P.3d 586, 591 (2004) (holding that a conviction at trial "under a higher burden of proof cured any irregularities that may have occurred during the grand jury proceedings"). Therefore, we conclude the district court did not err by denying this claim without first conducting an evidentiary hearing.

(Exh. 220 at 6.)

The state-court record supports the NCA's determination as Perry, not trial counsel, personally and "unconditionally" waived his right to a preliminary hearing. (Exhs. 21 at 2; 24 at 2.) Perry claims that the charges would have been discredited had counsel asked Carpenter questions about blood on the walls and garage floor, pouring bleach on Perry's clothes, or cutting Perry's chest with a knife, are unsubstantiated. Because Perry was convicted under the higher burden of proof at trial (beyond a reasonable doubt) versus the lower burden of proof that would have applied to the evidence at a preliminary hearing (probable cause), Perry failed to establish there is a reasonable probability the result of the preliminary hearing would have been different but for counsel's performance.[5] Ground 5 is denied because the NCA's determination is neither contrary to nor constitutes an unreasonable application of clearly established federal law as determined by the Supreme Court and is not based on an unreasonable determination of the facts considering the state court proceedings.

### F.    Ground 6

Perry alleges trial counsel was ineffective for failing to have Carpenter submit to a

---

[5] A Justice Court's role at preliminary hearing is to determine whether there is probable cause to find that offense has been committed and that defendant committed it. *See* NRS § 171.206; *State v. Justice Court of Las Vegas Tp., Clark County*, 112 Nev. 803, 806, 919 P.2d 401, 402 (1996) (explaining that a preliminary hearing is not a trial and the issue of the defendant's guilt or innocence is not a matter before the justice court); *Robertson v. Sheriff, Clark County*, 1969, 462 P.2d 528, 85 Nev. 681 (1969) (At preliminary hearing there need not be produced quantum of proof required at trial to establish guilt of offender beyond reasonable doubt.). A trial determines guilt beyond a reasonable doubt. *Lisle v. State*, 113 Nev. 679, 699, 941 P.2d 459, 472 (1997), *overruled on other grounds by Middleton v. State,* 114 Nev. 1089, 1117 n.9, 968 P.2d 296, 315 n.9 (1998).

psychiatric examination to detect any "thought disorders or distortion of perceptions that might affect credibility" as Carpenter was diagnosed with multiple psychiatric issues. (ECF No. 15 at 9–10.)  He contends Carpenter changed her story multiple times, her mental status was crucial and played a role in the self-defense claim, and without a psychiatric test, counsel was unable to effectively cross-examine Carpenter about the fabricated crime scene. (*Id.*)  He claims counsel's failure prejudiced him because a psychiatric examination would have resulted in having the charges dropped or lesser charges. (*Id.*)

The NCA determined Perry failed to demonstrate counsel's performance was deficient because he did not establish what mental health issues Carpenter suffered or that counsel could have compelled Carpenter to submit to psychological examination:

> [P]erry claimed that trial counsel was ineffective for failing to have the victim psychologically examined prior to trial because the victim has mental health issues.  Perry did not allege what those mental health issues were, and Perry failed to demonstrate that counsel could have compelled the victim to be psychologically examined based on his allegation that she suffered from mental health issues.  Therefore, he failed to demonstrate that counsel was deficient. *See Donovan v. State,* 94 Nev. 671, 675, 584 P.2d 708, 711 (1978) (holding that counsel is not deficient for failing to make futile motions)  Accordingly, we conclude the district court did not err by denying this claim without first conducting an evidentiary hearing.

(Exh. 220 at 6.)

In the context of a child victim in a sexual assault case, a defendant must establish a compelling need for an independent psychological examination of a child victim before that victim is required to submit to the evaluation. *See Abbott v. State*, 122 Nev. 715, 138 P.3d 462 (2006).[6] To determine whether there exists a compelling need for an examination, courts consider three factors:  (1) whether the State called or benefitted from a psychological expert, (2) whether the evidence of the offense is supported by little or no corroboration beyond the testimony of the victim, and (3) whether there is a reasonable basis for believing that the victim's mental or emotional state may have affected his or her veracity. *Id.* at 727–32, 138 P.3d at 470–73.

---

[6] Perry relies on a South Dakota case involving the issue whether a defendant could compel a psychiatric evaluation of a five-year old child witness in a criminal pedophilia case. (ECF No. 15 at 9–10; Exh. 104 at 14–15 (citing *State v. Osgood*, 2003 S.D. 87, 667 N.W.2d 687, 693–94 (2003)).  South Dakota law does not control in Nevada or in federal habeas corpus.

Assuming Nevada authorizes compulsory psychological evaluation of an adult victim of domestic abuse, the NSC was objectively reasonable in its determination that trial counsel's failure to seek such an evaluation was not deficient performance.  The State did not rely upon or call a psychological or psychiatric expert.  Evidence of the offenses is corroborated by photographs of Carpenter's injuries, Leibowitz's testimony, and evidence police found at the crime scene.  And Perry failed to specify any mental health issues that would have supported a compelling need for a psychological examination of Carpenter.  Gabaeff's notes include references to Carpenter suffering anxiety and depression and Carpenter testified she started seeing a psychiatrist after the incident but did not elaborate about her diagnoses. (Exh. 62 at 68.)  Carpenter's victim impact statement asserts that after the incident she was treated for nightmares, paranoia, and taking antidepressants and sleep aids. (Exh. 71 at 2.)  At trial, Carpenter testified she did not recall whether she suffered from insomnia at the time of the incident but had insomnia in the past.  (Exh. 62 at 82–83, 93.)  Thus, although there is some evidence Carpenter suffered mental health issues, none appear to affect veracity or include thought disorders or distortion of perceptions that might affect credibility.  The NCA was objectively reasonable in its determination that Perry failed to establish counsel's performance was deficient as there is no basis to conclude counsel's failure to move to compel Carpenter to submit to a psychological examination fell below an objective standard of reasonableness under the circumstances.  Ground 6 is denied.

## G.    Ground 7

Perry alleges trial counsel was ineffective in closing argument by calling Perry "a drug addled maniac," which he claims destroyed any possibility of a credible self-defense claim, and prejudiced Perry because, before the remark, he had a chance of acquittal. (ECF No. 15 at 10–11.)

Carpenter testified she believed Perry was a drug dealer, that he frequently had marijuana for personal use, and, although he told her he had crack cocaine, she never saw it, and never saw him use or sell it. *See supra* at p. 2.  In closing argument, defense counsel argued there were multiple "holes" and "inconsistencies" in Carpenter's testimony, Carpenter provided no clear reason for the attack, and speculated "perhaps" Perry "was a drug-addled maniac":

[DEFENSE COUNSEL]:  The significance of the phone initially, for no—which

there's not a clear reason given. And perhaps my client was a drug-addled maniac, perhaps there was a dispute that was ongoing between of them, perhaps they were engaged in economic transactions to generate money and interest to support the promissory note—

[THE STATE]: I'm going to object, Your Honor. That assumes a lot of facts not in evidence.

. . . .

[DEFENSE COUNSEL]: She denied all those things.

THE COURT: —so you've got to focus on what the evidence is.

[DEFENSE COUNSEL]: She denied all those things . . . .

(Exh. No. 67 at 20.)

The NCA determined Perry failed to demonstrate counsel was ineffective:

> [P]erry claimed that trial counsel was ineffective for calling him a "drug addled maniac" in closing argument. During closing arguments, counsel stated that the victim testified that maybe Perry acted this way because he was on drugs. Counsel used this statement, along with other statements from the victim, to demonstrate the victim was not credible. Thus, Perry failed to demonstrate counsel was deficient or a reasonable probability of a different outcome at trial had counsel not used this phrase during closing arguments. Therefore, we conclude the district court did not err by denying this claim without first conducting an evidentiary hearing.

(Exh. 220 at 6–7.)

In the context of the evidence and counsel's argument, the NCA reasonably concluded counsel's argument was that Carpenter's lack of explanation for the incident suggested Perry might have been under the influence of drugs. (Exh. 67 at 17–23.) When the State objected that Carpenter did not suggest that the incident was caused by drugs, counsel conceded Carpenter denied it. Under the circumstances, it was objectively reasonable for the NCA to conclude counsel's argument did not fall below an objective standard of reasonableness and there is no reasonable probability the result of the proceeding would have been different but for counsel's argument. Ground 7 is denied because the NCA's determination is neither contrary to nor constitutes an unreasonable application of clearly established federal law as determined by the Supreme Court and is not based on an unreasonable determination of the facts considering the state court proceedings.

### H.    Ground 8

Perry alleges trial counsel was ineffective for failing to investigate Carpenter's history of mental issues, fraudulent selling of prescription medication, and he was prejudiced because

Carpenter used her knowledge of the justice system to increase the charges. (ECF No. 15 at 11.)

The NCA determined counsel was not ineffective because Carpenter denied selling her prescription medication and Perry failed to establish Carpenter was convicted of a crime associated with selling prescription medication:

> [P]erry claimed that trial counsel was ineffective for failing to conduct a pretrial investigation into the victim's past. Perry claimed counsel would have discovered that the victim was involved in a scheme where she was selling prescription pills. Perry failed to allege that the victim had been convicted of any crime associated with selling prescription pills or that this evidence would have been admissible at trial. *See* NRS 50.085(3). Further, counsel did ask the victim if she was selling her prescription pain medications and she denied doing so. Therefore, Perry failed to demonstrate counsel was deficient or a reasonable probability of a different outcome at trial had counsel done further investigation. Accordingly, we conclude the district court did not err by denying this claim without" first conducting an evidentiary hearing.

(Exh. 220 at 7.)

The NCA was objectively reasonable in its determination Perry failed to demonstrate that, had counsel investigated, he would uncover evidence that Carpenter sold prescription medications. Defense counsel asked Carpenter whether she ever gave Perry any prescription medications to sell, she replied, "Not that I can recall," and when asked whether it was possible, she replied, "I don't recall . . . Mr. Perry knew that I received narcotic medication from my pain management doctor." (Exh. 62 at 101.) Perry submits nothing demonstrating Carpenter had prior convictions for selling prescription medications and fails to specify how or what counsel could have uncovered had counsel investigated whether Carpenter was illegally selling prescription medications. *See Strickland*, 466 U.S. at 690–91 ("strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation."); *Bragg*, 242 F.3d at 1088 ("When the record clearly shows that the lawyer was well-informed, and the defendant fails to state what additional information would be gained by the discovery she or he now claims was necessary, an ineffective assistance claim fails."). Perry also fails to establish that, but for counsel's failure to investigate Carpenter's knowledge of the legal system, counsel would have uncovered anything more than her status as a paralegal and that she planted blood on the walls and in the sink to leave a trail of evidence at her home, which was elicited at trial. Finally, as discussed in Ground 6, Perry failed to identify any mental issues that

would have affected Carpenter's credibility or the self-defense theory. Ground 8 is denied because the NCA reasonably determined Perry failed to overcome the strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance or that there is a reasonable probability that, but for counsel's failure to investigate, the result of the trial would have been different.

## I.    Ground 9

Perry alleges trial counsel was ineffective for failing to interview Leibowitz before trial because it would have prepared counsel for Leibowitz's testimony that Carpenter's injuries were the result of abuse. (ECF No. 15 at 12.) He claims he was prejudiced because the abuse factor changed the case from one of domestic violence to assault and battery. (*Id.*)

The NCA determined Perry failed to demonstrate trial counsel was ineffective because, among other things, counsel questioned Leibowitz regarding his use of the word abuse:

> [P]erry claimed that trial counsel was ineffective for failing to interview the State's doctor prior to trial. Specifically, Perry claimed the doctor testified as an expert in abuse but he was not actually an expert in abuse. First, the witness did not state he was an expert in abuse. Instead, the witness testified that this type of orbital fracture usually occurs from blunt force trauma and the injury was consistent with the type of assault claimed by the victim. He also stated the victim claimed she was abused. Second, counsel questioned the doctor extensively regarding his use of the word abuse and whether the doctor could conclusively say the injury was the result of abuse. Given this record, Perry failed to demonstrate that counsel was deficient for failing to interview the State's doctor prior to trial and failed to show a reasonable probability of a different outcome at trial had counsel interviewed the doctor. Therefore, we conclude the district court did not err by denying this claim without first conducting an evidentiary hearing.

(Exh. 220 at 7–8.)

The NCA's determinations constitute an objectively reasonable application of *Strickland* to the facts in the case. At trial, Leibowitz did not testify he was an expert in abuse; only that, from his perspective, he assumed it was the result of abuse. When he asked Carpenter how she obtained her injury, she told him, "she was assaulted and the . . . guy's in jail." (Exh. 62 at 25–26.) On cross-examination, Leibowitz testified, based "on the clinical observation of what I see; that she was punched out. I assume it was abuse. I mean, it could've been any other kind of fight but it looked as though she was punched out." (*Id.*) When asked whether it could have been mutual combat, Leibowitz testified he thought, "when someone gets punched out by their significant other

that's abuse.  I'm not a lawyer, but that's what it seems like to me," but "anyone could have punched this person." (*Id.* at 26–27.)  He explained "I'm not just a guy who fixes the stuff. I'm supposed to—you know, if I—if I thought that someone was punched out by someone, and it was an abuse situation, I'm supposed to report it." (*Id.*)  Leibowitz conceded orbital fractures can be the result of non-abusive circumstances, e.g., "construction injuries," and the result of a "knee in" during a soccer game. (*Id.* at 28–29, 34, 37.)  Perry fails to establish how counsel's failure to conduct a pretrial interview of Leibowitz could have better prepared counsel to cross-examine Leibowitz about his assumption that Carpenter's injury was the result of abuse. *See Bragg*, 242 F.3d at 1088 ("When the record clearly shows that the lawyer was well-informed, and the defendant fails to state what additional information would be gained by the discovery she or he now claims was necessary, an ineffective assistance claim fails.").

The NCA was also objectively reasonable in its determination Perry failed to show there is a reasonable probability that, but for counsel's failure to conduct a pretrial interview, the result of the trial would have been different.  In Nevada, a domestic battery is differentiated from battery based on the existence of evidence of a relationship between the defendant and the victim. *See* NRS § 33.018(1) ("domestic violence occurs when a person commits" "a battery" on any "person with whom the person has had or is having a dating relationship," and "'dating relationship' means frequent, intimate associations primarily characterized by the expectation of affectional or sexual involvement.").  In Perry's case, Carpenter supplied testimony that she and Perry had a prior dating relationship. (Exh. 62 at 40–42.)  Perry fails to show a reasonable probability that a pretrial interview of Leibowitz would have changed the trial outcome.  Ground 9 is denied.

### J.    Ground 10

Perry alleges trial counsel was ineffective for failing to interview the T.J. Maxx security guard because the security guard saw Carpenter "act like a lunatic in public" and her actions inside the store caused Perry to defend himself the way he did. (ECF No. 15 at 12–13.)  He claims the security guard's testimony would have bolstered his self-defense theory, and by not interviewing the security guard, counsel was unable to impeach Carpenter "about her fabricated lies." (*Id.*)

The NCA determined Perry did show counsel was ineffective because Perry did not specify

how interviewing the security guard would change the ruling disallowing the guard's testimony:

> [P]erry claimed that trial counsel was ineffective for failing to interview and investigate the security guard. Perry does not allege how interviewing the security guard or investigating him would have changed the trial court's decision not to allow the security guard to testify. Thus, Perry failed to demonstrate a reasonable probability of a different outcome at trial had counsel done further investigation. Therefore, we conclude the district court did not err by denying this claim without first conducting an evidentiary hearing.

(Exh. 220 at 4.)

The NCA was objectively reasonable in its determination that Perry fails to show trial counsel could have obtained from the security guard information that would have changed the trial court's ruling and permitted the guard to testify he saw Carpenter "act like a lunatic in public." *See supra* at Ground 1(B). It appears, however, that the NCA did not adjudicate Perry's claim, i.e., that trial counsel was ineffective for failing to interview the guard to obtain information that trial counsel could have used to impeach Carpenter about her actions during the T.J. Maxx incident. Applying *de novo* review,[7] the Court finds that even assuming counsel failed to interview the guard or was deficient in failing to do so, Perry fails to establish a reasonable probability the result of the trial would have been different.

Carpenter testified she went to the store with a friend, who owed her money. (Exh 62 at 75–76.) Carpenter claimed her friend led her on a "goose chase" before arriving at the T.J. Maxx store and this made her "furious." (*Id.* at 76–77.) She chased her friend through the store with a crowbar to threaten, but not harm, her. (*Id.*) Carpenter pleaded guilty to misdemeanor assault and misdemeanor carrying concealed weapons as a result. (*Id.*) On cross-examination, defense counsel elicited Carpenter's admission that she could not recall her friend's name, that she "lost it" because she was agitated, she had a knife and crowbar during the incident, and she told Perry about the incident. (*Id.* at 81–84.) Trial counsel did not cross-examine Carpenter at trial about whether she went through a plate glass window when the security guard apprehended her. At sentencing, however, defense counsel argued "the final result of the security guard taking her down was her going through a plate glass window." (Exh. 76 at 8–9.)

---

[7] *See Visciotti v. Martel*, 862 F.3d 749, 760 (9th Cir. 2016) (citing *Pirtle v. Morgan*, 313 F.3d 1160, 1167 (9th Cir. 2002) and *Cone v. Bell*, 556 U.S. 449, 472 (2009)).

Although "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment," eliciting Carpenter's admission that Perry knew that she went through a plate glass window when she was apprehended during the T.J. Maxx incident would have supported a claim of self-defense in Perry's case. There is, however, no evidence in the record, and Perry does not allege, that he knew those facts at the time of the offenses or that trial counsel knew those facts at the time of trial. Assuming arguendo that trial counsel's failure to interview the security guard to obtain those facts is deficient performance, and assuming there is evidence Perry knew those facts about the T.J. Maxx incident at the time of the offenses, there is nonetheless no reasonable probability the result of the trial would have been different but for counsel's failure to investigate due to the overwhelming evidence of Perry's guilt. Perry did not testify about his version of events, there is no self-defense narrative through which to view Perry's actions as self-defense, and Carpenter testified Perry punched her when she tried to escape to the upstairs bathroom, she bit his hand to escape, he kicked her down a flight of stairs, and he punched and kicked her while she lay on the kitchen floor. Ground 10 is therefore denied.

### K.    Ground 11

Perry alleges trial counsel was ineffective for failing to object to a conflict of interest because the court-appointed investigator was married to the justice of the peace who ruled on Perry's case. (ECF No. 15 at 13–14.) He claims that, had the investigator done a better job, they would not have waived preliminary hearing and the charges might have been reduced or dropped. (*Id.*) He claims, "a lot more investigation needed to be done on all the states witnesses, the crime scene, the crime scene photographs, and other fabricated evidence." (*Id.*)

The NCA determined Perry failed to establish trial counsel was ineffective because he failed to allege how the investigator's relationship with the justice court affected the investigator's ability to investigate his case:

> [P]erry claimed that trial counsel was ineffective for failing to raise the conflict of interest between the court-appointed investigator and the justice court judge assigned to this case. He claimed the investigator and justice court judge were married and that this relationship somehow affected the investigator's ability to investigate. Perry waived his preliminary hearing and he failed to allege how

the investigator's relationship with the justice court judge, who no longer had jurisdiction over the case, affected the investigator's ability to investigate his case. Thus, Perry failed to demonstrate counsel was deficient or a reasonable probability of a different outcome at trial had counsel raised a conflict-of-interest claim. Therefore, we conclude the district court did not err by denying this claim without first conducting an evidentiary hearing.

(Exh. 220 at 8.)

The NCA was objectively reasonable in its determination Perry did not establish trial counsel's failure to object to the alleged conflict of interest fell outside reasonable professional judgment, or a reasonable probability the result of the trial would have been different had trial counsel objected and a different investigator been appointed to investigate Perry's case. Perry failed to show that, even assuming the investigator was in fact married to the justice of the peace, the investigator failed to investigate material facts, the alleged conflict of interest was the cause of the failure to investigate material facts, such failure adversely affected counsel's performance, or the result of the trial would have been different but for counsel's failure to object. Unsupported conclusory allegations are insufficient to establish a claim of ineffective assistance. *See James*, 24 F.3d at 26 (rejecting ineffective assistance of counsel ground based on unsupported allegations and noting that "conclusory allegations which are not supported by a statement of specific facts do not warrant habeas relief"). Ground 11 is denied.

**L.    Ground 12**

Perry alleges trial counsel was ineffective for failing to file a pretrial writ or motion requesting dismissal of the charges for Assault with a Deadly Weapon and Battery Resulting in Substantial Bodily Harm as unconstitutional because they overlapped and concerned the same act. (ECF No. 15 at 14–15.)

The NCA determined counsel was not ineffective because the charges constitute different crimes and do not overlap:

> [P]erry claimed that trial counsel was ineffective for failing to argue the assault with a deadly weapon and the battery causing substantial bodily harm constituting domestic battery "overlapped" and one of them should have been dismissed. This claim fails for two reasons. First, assault with a deadly weapon and battery causing substantial bodily harm constituting domestic battery do not violate double jeopardy and are not redundant. *See Jackson v. State*, 128 Nev. 598, 607, 611, 291 P.3d 1274, 1280, 1282–83 (2012). Thus, Perry failed to demonstrate that the charges "overlap" and should have been dismissed. Second, the facts alleged for each charge were different and, therefore, they constituted different

crimes. The assault was charged for threatening the victim with a knife. The battery was charged for grabbing the victim, striking her head against or into the floor, and/or for kicking her in the face. Thus, Perry failed to demonstrate counsel was deficient for failing to argue that one of the charges should be dismissed. He also failed to demonstrate a reasonable probability of a different outcome had counsel so argued. Therefore, we conclude the district court did not err by denying this claim without first conducting an evidentiary hearing.

(Exh. 220 at 8–9.)

The information charged, among other things, that Perry:

COUNT 4 — ASSAULT WITH A DEADLY WEAPON

did then and there wilfully, unlawfully, feloniously and intentionally place another person in reasonable apprehension of immediate bodily harm and/or did willfully and unlawfully attempt to use physical force against another person, to-wit: CORLA CARPENTER, with use of a deadly weapon, to-wit: a knife, by threatening to kill the said CORLA CARPENTER while holding said knife and/or by slashing at/towards her with said knife and/or by holding said knife to her throat.

. . . .

COUNT 6 — BATTERY RESULTING IN SUBSTANTIAL BODILY HARM CONSTITUTING DOMESTIC VIOLENCE

did then and there wilfully, unlawfully, and feloniously use force or violence upon the person of his spouse, former spouse, or any other person to whom he is related by blood or marriage, a person with whom he is or was actually residing, a person with whom he has had or is having a dating relationship, a person with whom he has a child in common, the minor child of any of those persons or his minor child, to-wit: CORLA CARPENTER, by grabbing the said CORLA CARPENTER and striking her head against/into the floor and/or by kicking her repeatedly in the face, resulting in substantial bodily harm to the said CORLA CARPENTER.

(Exh. 26 at 3–4.)

Assault means either (1) unlawfully attempting to use physical force against another person; or (2) intentionally placing another person in reasonable apprehension of immediate bodily harm. *See* NRS § 200.471(1)(a). *See also Rodriguez v. State*, 133 Nev. 905, 909, 407 P.3d 771, 774 (2017) (defining "deadly weapon"). "'Battery' means any willful and unlawful use of force or violence upon the person of another." NRS § 200.481(a). "[D]omestic violence occurs when a person commits" "a battery" on any "person with whom the person has had or is having a dating relationship," and "'dating relationship' means frequent, intimate associations primarily characterized by the expectation of affectional or sexual involvement." NRS § 33.018(1)(a) and (3). "[S]ubstantial bodily harm" means either "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement or protracted loss or impairment of the

function of any bodily member or organ; or (2) [p]rolonged physical pain." NRS § 0.060.

Prosecution for two separate crimes does not violate the federal constitution if each crime requires proof of a fact not contained in the other crime. *See Blockburger v. United States*, 284 U.S. 299, 304 (1932).  At one time, *Salazar v. State*, 119 Nev. 224, 228, 70 P.3d 749, 751–52 (2003) held redundant convictions based on the "same conduct" and that do not comport with legislative intent will be reversed; however, *Salazar's* "same conduct" test has since been rejected. *See Jackson v. State*, 128 Nev. 598, 611, 291 P.3d 1274, 1282 (2012) (disapproving the "redundancy" progeny to the extent it endorse a fact-based "same conduct" test for determining the permissibility of cumulative punishment and holding the proper focus is on legislative authorization, and under *Blockburger* multiple punishment is authorized unless, based on their elements, "[o]ne charged offense is the same or a lesser-included offense of the other.").

Here, the NCA reasonably determined Perry did not establish trial counsel's performance was deficient or prejudicial.  The redundancy theory based on "same conduct" was discredited in 2012—before Perry's offenses in 2013.  And, as explained above, the elements of proof required for Assault with a Deadly Weapon and Battery Causing Substantial Bodily Harm Constituting Domestic Battery are not wholly identical and the facts alleged for each charge were different here. Under *Strickland*, counsel does not render ineffective assistance by not filing a motion that was meritless or likely would have failed. *See James*, 24 F.3d at 27.  Ground 12 is denied because Perry did not establish trial counsel's failure to move to dismiss the charges as redundant or overlapping fell below an objective standard of reasonableness or a reasonable probability such a motion would have resulted in dismissal of either or both charges.

## M.    Ground 13

Perry alleges trial counsel was ineffective for failing to investigate the crime scene and the bleach that Carpenter used on Perry's clothes, which would have supported the self-defense theory by showing Carpenter's erratic behavior and that she changed the evidence. (ECF No. 15 at 15.)

The NCA determined this claim fails because no bleached clothing was found at the scene:

> [P]erry claimed that trial counsel was ineffective for failing to investigate and question the victim about the bleach that Perry alleged the victim had poured on his clothing.  No bleached clothing was found by the police officers at the crime

scene.  Therefore, Perry failed to demonstrate counsel was deficient or a reasonable probability of a different outcome at trial had counsel attempted to investigate the bleached clothing.  Therefore, we conclude the district court did not err by denying this claim without first conducting an evidentiary hearing.

(Exh. 220 at 9.)

The arrest report states nothing about bleached clothing. (Exh. 10 at 6–7.)  Moreover, no one at trial testified that the police found bleached clothing at the crime scene.  According to Gabaeff's notes, Perry told him Carpenter bleached his clothing, however, Gabaeff's notes state, "no bleach noted by cops or cloths with bleach found." (Exh. 104 at 26, 29.)  The NCA was objectively reasonable to conclude Perry fails to establish trial counsel's failure to investigate the crime scene for bleach was unreasonable from counsel's perspective at the time. *Strickland*, 466 U.S. at 689–90.  Moreover, Perry fails to establish counsel would have obtained evidence that Carpenter bleached Perry's clothing, or that such evidence would establish Carpenter altered the crime scene with bleach.  Accordingly, the NCA's determination that trial counsel's performance was neither deficient nor prejudicial is neither contrary to nor constitutes an unreasonable application of *Strickland* and is not based on an unreasonable determination of fact considering the evidence presented during the state court proceedings.  Ground 13 is therefore denied.

## N.    Ground 14

Perry alleges trial counsel was ineffective for failing to investigate blood on the floor and walls where Carpenter fabricated the crime scene, resulting in the failure to raise the fabricated evidence defense that Carpenter planted blood in specific places and took the photographs of herself that were used at trial, and which could have been altered by Carpenter to support her story and increase the charges against Perry. (ECF No. 15 at 16.)

The NCA rejected this claim based on the evidence at trial:

> [P]erry claimed that trial counsel was ineffective for failing to investigate the blood on the floor and walls.  He claimed counsel should have investigated whether the victim fabricated evidence because she put blood throughout the home and because the pictures she took at the crime scene were the only ones used by the State at trial.  At trial, the victim admitted that she placed blood throughout the home.  She claimed she did this because she was afraid Perry would kidnap or kill her and she wanted the police to see there was a struggle.  Further, the State used photographs taken by the crime scene analyst and three photos taken by the victim.  Because the victim admitted to placing blood throughout the home and the State used more photos than just those provided by the victim, Perry failed to demonstrate counsel was deficient or a reasonable probability of a different outcome at trial had

he done further investigation.  Therefore, we conclude the district court did not err by denying this claim without first conducting an evidentiary hearing.

(Exh. 220 at 9–10.)

The trial record supports the NCA's determinations that counsel was not ineffective under the circumstances.  Carpenter admitted to placing blood throughout the home and the State used more photos than just those provided by Carpenter.  Carpenter admitted that "instinctually, by being a paralegal," she decided to "leave some evidence to show that there was a struggle," that she "was bleeding," and "something happened," so she wiped blood on the doorway and walls of the half bath downstairs and spit in the sink. (Exh. 62 at 57–58.)  Las Vegas Metropolitan Police Department senior crime scene analyst Danielle Keller identified photographs she took of Carpenter's injuries and the crime scene on the morning of the incident. (Exh. 63 at 46–57.)  On cross-examination, defense counsel elicited Keller's admission that she did not see blood on the stairway and did not photograph Carpenter's hands. (*Id.* at 58–60.)  The State presented selfie photographs Carpenter took a couple of days after the incident "to chart the progress of [her] healing." (Exh. 62 at 78–80, 108–10.)  Defense counsel showed Keller one of Carpenter's selfie photographs depicting marks on her left pinkie and Keller stated she probably would have photographed them had she seen them or been told about them. (Exh. 63 at 60–61.)  Defense counsel showed selfies that Carpenter took of her face and Keller stated those selfies were consistent with the injuries Keller saw but appeared darker, and Keller admitted that bruises can darken over time. (*Id.*)  *See Ricci v. State*, 91 Nev. 373, 380–81, 536 P.2d 79, 83 (1975) (holding trial court admits photographs once the proponent of a photograph demonstrates the photograph "fairly and accurately depicted" what is reflected in the picture).

Ground 14 is denied as the NCA was objectively reasonable when it concluded Perry failed to show counsel's failure to investigate was objectively unreasonable based on the information known to counsel at the time, or a reasonable probability the result of the trial would have been different had counsel investigated the blood that Carpenter placed on the floor and walls, and presented fabricated-evidence defenses based on that blood and Carpenter's selfie photographs.

## O.    Ground 15

Perry alleges trial counsel was ineffective for failing to cross-examine Carpenter about the

bleach she poured onto Perry's clothes in the bathtub and fabricated photographs, blood marks, and multiple inconsistencies. (ECF No. 15 at 17.)  He claims that, but for counsel's failure to ask Carpenter about this, Perry would have been acquitted. (*Id.*)

This claim overlaps the claims in Grounds 13 and 14.  There is no basis in the record—beyond Perry's self-serving statements to Gabaeff—that Carpenter bleached Perry's clothes to fabricate the crime scene.  The contention that the selfie photographs were fabricated is belied by the State expert's testimony that they fairly depict Carpenter's injuries except that the injuries were darker, which is not unexpected given they were taken two days after the incident.  Perry identifies no inconsistencies or blood marks that warrant investigation based on the record.  Thus, the NCA was objectively reasonable in its application of *Strickland* and determination Perry did not overcome the strong presumption that, under the circumstances, counsel's failure to cross-examine Carpenter about whether she bleached Perry's clothing, altered the selfie photographs, or about unspecified blood marks and inconsistencies, might be considered sound trial strategy, and that Perry failed to demonstrate a reasonable probability the result of the trial would have been different had counsel done so.  Ground 15 is denied.

### P.    Ground 16

Perry alleges trial counsel was ineffective for failing to correct dates for past issues, incomplete sentences, and "a truckload of lies" contained in the victim impact statement, which he claims caused the trial court to impose maximum penalties on all charges.[8] (ECF No. 15 at 18.)

"The Division of Parole and Probation is mandated by statute to prepare a [presentence investigation report] PSI to be used at sentencing for any defendant who pleads guilty to or is found guilty of a felony." *Stockmeier v. State, Bd. of Parole Comm'rs*, 127 Nev. 243, 248–49, 255 P.3d 209, 212–13, (2011) (citing NRS § 176.135(1)).  "Because the sentencing court will rely on a defendant's PSI, the PSI must not include information based on 'impalpable or highly suspect evidence.'" *Id.* (quoting *Goodson v. State,* 98 Nev. 493, 495–96, 654 P.2d 1006, 1007 (1982)). *See also Goodson,* 98 Nev. at 496, 654 P.2d at 1007 (holding information in a PSI indicating defendant

---

[8] Respondents contend that Perry was not sentenced to the maximum allowable sentences. (ECF No. 40 at 42–43.)

was a drug trafficker was impalpable and highly suspect because it was merely a "bald assertion," and "unsupported by any evidence whatsoever"). "[A]fter preparing a PSI, the Division must disclose the report's factual content to the prosecuting attorney, defense counsel, and the defendant, and give the parties the opportunity to object to any of the PSI's factual allegations." *Id.* (citing NRS § 176.156(1). *See also Shields v. State,* 97 Nev. 472, 472–73, 634 P.2d 468, 468–69 (1981) (reversing sentence because defendant not provided police reports included in the PSI that were material to the sentencing decision).

In Perry's case, defense counsel filed a sentencing memorandum contending the following alleged inaccuracies in the PSI: (1) Perry was sentenced in 2005 to a four- not a five-, year-prison term, plus 120 days of bootcamp, paroled in May of 2006, and discharged in November of 2006 after the Illinois Department of Corrections found Perry successfully completed his requirements; and (2) Perry never violated the terms of his parole as alleged at the top of page five of the PSI. (Exh. 75 at 3.) Although the sentencing memorandum states a letter from Perry was attached, it was not attached, and counsel explained at sentencing that they discussed it and decided not to attach it. (Exh. 76 at 3.) During his colloquy with the sentencing court, Perry mentioned there were inconsistencies in the victim's statement in the PSI, but he realized they did not have time to go through that, and the sentencing court replied, "You've been convicted so we're . . . not going back over that." (*Id.* at 7–8.) Defense counsel argued Carpenter had a kitchen knife when she had the dispute over $450 with another woman at the department store and "the final result of the security guard taking her down was her going through a plate glass window," as "important considerations that bear on her perception of things and what's appropriate and essentially, reality . . .." (*Id.* at 8–9.)

The NCA rejected this claim ruling that Perry failed to allege specific factual allegations that are not belied by the record and, if true, would entitle him to relief:

> [P]erry claimed that trial counsel was ineffective for failing to correct errors in his presentence investigation report (PSI). Perry claimed the PSI had incorrect dates for past issues and contained incomplete sentences and an untruthful victim impact statement. Perry failed to support this claim with specific factual allegations that are not belied by the record and, if true, would entitle him to relief. He did not allege what the incorrect dates were, which sentences were incomplete, or what parts of the victim impact statement were untruthful. Thus, he failed to demonstrate

counsel was deficient or a reasonable probability of a different outcome had counsel corrected the alleged errors in his PSI. Therefore, we conclude the district court did not err by denying this claim without first conducting an evidentiary hearing.

(Exh. 220 at 10–11.)

At sentencing, defense counsel argued there were inaccuracies concerning Perry's past sentences and alleged violations of parole in the PSI. Perry fails to specify additional information in the PSI was incorrect. Perry likewise failed to specify at sentencing (or in his Petition) any inconsistencies in Carpenter's statement and PSI. Under the circumstances the NCA's determination that Perry failed to demonstrate counsel's performance was deficient or a reasonable probability of a different outcome had counsel requested additional correction to the PSI, is neither contrary to nor constitutes an unreasonable application of clearly established federal law as determined by the Supreme Court and is not based on an unreasonable determination of fact considering the evidence in the state court proceeding. Ground 16 is denied.

## Q.    Ground 17

Perry alleges trial counsel was ineffective for failing to move for a new trial based on the trial court's ruling on the jury instructions. (ECF No. 15 at 18–19.)

The NCA determined Perry failed to demonstrate he was prejudiced by counsel's failure to move for a new trial based on the trial court's erroneous exclusion of the self-defense instruction:

> [P]erry claimed that trial counsel was ineffective for failing to file a motion for new trial because the trial court improperly refused to give instructions regarding self-defense. As stated previously, this court has already concluded that the trial court's failure to read the self-defense instructions was harmless. *See Perry,* No. 69139-COA, 2016 WL 7377159, at *1. Thus, Perry failed to demonstrate that a motion for new trial would have had a reasonable probability of success, and counsel is not deficient for failing to make futile motions. *Donovan,* 94 Nev. at 675, 584 P.2d at 711. Therefore, we conclude the district court did not err by denying this claim without first conducting an evidentiary hearing.

(Exh. 220 at 11.)

The determination in Perry's direct appeal that the trial court's erroneous exclusion of the self-defense instruction was harmless beyond a reasonable doubt forecloses argument that counsel's performance with respect to the error was prejudicial. *See White*, 153 F.3d at 208 (concluding court's finding that constitutional error is harmless forecloses any argument that counsel's performance with respect to the error was prejudicial). Perry thus fails to demonstrate

there is a reasonable probability the result of the trial would have been different but for counsel's failure to move for a new trial based on the trial court's error regarding the self-defense instruction. Ground 17 is denied.

**R.    Ground 18**

Perry alleges trial counsel was ineffective for failing to investigate Carpenter's fraud with Dr. Bruce (who is allegedly incarcerated for the mass sale of prescription pills) because Carpenter was a knowing participant, and such evidence is relevant to her credibility. (ECF No. 15 at 19–20.)

This claim was addressed in the related Ground 8 where this Court determined the NSC was objectively reasonable in its determination that Perry failed to demonstrate, had counsel investigated, he would uncover evidence Carpenter sold prescription medications. Perry submits no basis to conclude Carpenter had prior convictions for selling prescription medications and when defense counsel asked Carpenter whether she sold prescription pain medications, Carpenter denied it. Assuming Carpenter's pain management physician is incarcerated for mass sale of prescription medications, Perry has not established trial counsel would have uncovered evidence that Carpenter was a knowing participate in prescription-medication fraud with that physician. Given the record, and Perry's speculative claim, it was objectively reasonable for the NCA to determine Perry failed to establish trial counsel's failure to investigate Carpenter for fraud in connection with her pain management physician fell below an objective standard of reasonableness or a reasonable probability counsel would have uncovered such evidence for trial. Ground 18 is denied.

**S.    Ground 19**

Perry alleges ineffective assistance of trial counsel based on cumulative error of trial counsel, claiming the cumulative errors of counsel warrant a new trial. (ECF No. 15 at 20.)

The NCA determined Perry did not identify multiple instances of deficient performance to cumulate:

> [P]erry claimed the cumulative errors of trial and appellate counsel entitled him to relief. Even if multiple instances of deficient performance may be cumulated for purposes of demonstrating prejudice, *see McConnell v. State,* 125 Nev. 243, 259 & n.17, 212 P.3d 307, 318 & n.17 (2009), Perry did not identify multiple instances of deficient performance to cumulate. Therefore, we conclude

the district court did not err by denying this claim without first conducting an evidentiary hearing.

(Exh. 220 at 11.)

Cumulative error applies where, "although no single trial error examined in isolation is sufficiently prejudicial to warrant reversal, the cumulative effect of multiple errors may still prejudice a defendant." *United States v. Frederick*, 78 F.3d 1370, 1381 (9th Cir. 1996). *See also Parle v. Runnels*, 387 F.3d 1030, 1045 (9th Cir. 2004) (explaining a court must assess whether the aggregated errors "'so infected the trial with unfairness as to make the resulting conviction a denial of due process'") (citing *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)).

Although IAC claims are examined separately to determine whether counsel was deficient, the purpose of the Sixth Amendment's guarantee to counsel "is simply to ensure that criminal defendants receive a fair trial" and "that a defendant has the assistance necessary to justify reliance on the outcome of the proceeding." *Strickland*, 466 U.S. at 689, 691–92. The performance inquiry must be whether counsel's assistance was reasonable *considering all the circumstances. See id.* (emphasis added). *See also Boyde v. Brown*, 404 F.3d 1159, 1176 (9th Cir. 2005) ("Prejudice may result from the cumulative impact of multiple deficiencies.") (quoting *Cooper v. Fitzharris*, 586 F.2d 1325, 1333 (9th Cir. 1978)). The Ninth Circuit Court of Appeals has held, "[w]hile an individual claiming IAC 'must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment,'" the court "considers counsel's conduct *as a whole* to determine whether it was constitutionally adequate." *Browning v. Baker*, 875 F.3d 444, 471 (9th Cir. 2017) (emphasis in original) (quoting in part *Strickland*, 466 U.S. at 690).

The NCA was objectively reasonable in its determination that Perry failed to demonstrate multiple errors by trial counsel as the only error identified was for failure to object to removal of self-defense instruction. On consideration of the merits of Perry's IAC claims as a whole, including the possibility trial counsel may have been deficient in failing to interview the security guard for purposes of cross-examining Carpenter about facts supporting a self-defense claim as set forth in Ground 10, the Court concludes Perry has not established trial counsel's actions or omissions denied him a fair trial.

**V.    Certificate of Appealability**

This is a final order adverse to Perry.  Rule 11 of the Rules Governing Section 2254 Cases requires the Court to issue or deny a Certificate of Appealability (COA).  Therefore, the Court has *sua sponte* evaluated the claims within the petition for suitability for the issuance of a COA. *See* 28 U.S.C. § 2253(c); *Turner v. Calderon*, 281 F.3d 851, 864–65 (9th Cir. 2002).  "To obtain a COA under § 2253(c), a habeas prisoner must make a substantial showing of the denial of a constitutional right," and for claims rejected on the merits, a petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 483–84 (2000) (citing *Barefoot v. Estelle*, 463 U.S. 880, 893 & n.4 (1983)).  Applying these standards, a COA is warranted for Grounds 2, 10, and 19.

## VI.    Conclusion

It is therefore Ordered:

1.  Petitioner Genaro Richard Perry's Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 (ECF No. 15) is denied.

2.  A Certificate of Appealability is granted for Grounds 2, 10, and 19, and denied for all other grounds in the Petition.

3.  All requests for an evidentiary hearing are denied.

4.  The Clerk of Court is kindly directed to enter judgment accordingly and close this case.

DATED:  September 11, 2025

_____
GLORIA M. NAVARRO
UNITED STATES DISTRICT JUDGE